IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-___

JOHN D. JORDAN,

    Plaintiff,

vs.

ADAMS COUNTY SHERIFF'S OFFICE,
DEPUTY CHAD JENKINS, and
DEPUTY MICHAEL DONNELLON

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff John Jordan, by his attorneys Terrell M. Gaines and Robert M. Liechty, brings his complaint and jury demand as follows:

### INTRODUCTION

1. This is a civil rights action for monetary damages brought pursuant to 42 U.S.C. §1983.

2. John D. Jordan is an individual who resides in Bennett, Colorado.

3. On September 6, 2018, Mr. Jordan was acting as a citizen, and as a custodial parent for his nephew, Joe Jordan, at a car-accident scene which took place at the intersection of 6th Street and Palmer Avenue in Bennett, Colorado. Adams County sheriff deputies, defendants Donnellon and Jenkins, used excessive force against Mr. Jordan while effectuating an unlawful arrest of Mr. Jordan and then initiated

the filing of false charges against him, which were dismissed. Following his arrest, when Mr. Jordan was transported to the Adams County jail facilities, he was forced to remove religious articles of clothing against his will.

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. §1883. This Court possesses subject-matter jurisdiction pursuant to 28 U.S.C. §1331.

5. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b). All the events alleged herein occurred in the State of Colorado and all the parties were residents of the State at the time of the events giving rise to this complaint.

## PARTIES

6. At all times pertinent hereto plaintiff John D. Jordan was a citizen of the United States of America and a resident of the State of Colorado.

7. Defendant Adams County Sheriff's Office is a separate governmental entity responsible for the oversight, supervision, and training of its employees, including defendants Donnellon and Jenkins and its jail staff.

8. At all times relevant to this complaint, Deputy Donnellon was a resident of the State of Colorado and was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer employed by the Adams County Sheriff's Department.

9. At all times relevant to this complaint, Deputy Jenkins was a resident of the State of Colorado and was acting within the scope of his official duties and

employment and under color of state law in his capacity as a law enforcement officer employed by the Adams County Sheriff's Department.

10. At all times relevant to this complaint, the Adams County Sheriff's Office, through its jail staff, was acting under the color of state law.

**FACTUAL ALLEGATIONS**

11. On September 6, 2018, seventeen-year-old Joe Jordan was involved in an automobile accident at the intersection of Palmer Avenue and 6th Street in the town of Bennett, Colorado.  At the time of the accident, Joe Jordan was driving a commercial truck owed by Action Appliance, Inc., a company managed by his uncle, plaintiff John Jordan.

12. John Jordan drove to the scene following notice of the accident.  He was at the location to care for his nephew and as the manager of Action Appliance, Inc., whose truck Joe was driving.   Following Mr. Jordan's arrival at the accident location, he stood on a sidewalk near that accident location, and called his office to obtain insurance information on the involved truck.

13. Officer Donnellon then arrived at the accident location.  As Officer Donnellon walked by Mr. Jordan, Mr. Jordan spoke to the officer, telling him that Mr. Jordan was obtaining a photo of a proof of insurance for the truck.

14. Officer Donnellon then called Joe Jordan into the center of 6th Avenue and began to question Joe Jordan about how the accident happened.  Two additional witnesses to the accident were standing next to Mr. Jordan.  Mr. Jordan then instructed the two witnesses to also go with Joe into the street, to speak with the officer.

15. After asking one or two questions of Joe Jordan, Officer Donnellon raised his voice and appeared irritated in speaking to Joe. Officer Donnellon began to dictate to Joe how the car accident had happened, even though Officer Donnellon had not been present on the scene at the time of the accident.

16. Officer Jenkins then arrived at the accident location, and parked his patrol car nearby.

17. John Jordan, while remaining on the sidewalk, heard Officer Donnellon telling Joe Jordan how the accident had happened. John Jordan then objected to the actions and statements of the officer because the officer was intimidating Joe by putting words in the mouth of the teenager. John asked Officer Donnellon, "Are you taking a statement or are you giving a statement?"

18. Officer Donnellon, who believed that John Jordan was Joe Jordan's father, asked John Jordan to speak up. John Jordan repeated his question in a louder voice. Officer Donnellon continued talking with John Jordan while remaining in the middle of the street, and while also speaking with Joe Jordan.

19. John Jordan believed that Officer Donnellon was intimidating Joe and was putting words into Joe's mouth. Therefore, John Jordan, while trying to get the insurance information from his office, also tried to protect his nephew. He told Officer Donnellon that Joe's version of the accident was not what Officer Donnellon was asserting, that the point of impact was not where Officer Donnellon was representing, and that the other two witnesses present in the street were independent witnesses to the point of impact.

20. John Jordan raised his voice some five times over his 1½ minute interchange with Officer Donnellon.  Mr. Jordan stayed on the sidewalk while Officer Donnellon remained in the middle of the street approximately 30-40 feet away while the officer continuing to speak with Mr. Jordan and Joe.  Officer Donnellon was also demonstrating more and more agitation with Mr. Jordan.

21. For some inexplicable reason, Officer Donnellon then walked toward Mr. Jordan on the sidewalk to tell Mr. Jordan that he had a bad attitude, that he was a disgrace to his son, that he was a terrible father, and to tell him he was an embarrassment to his son.   As Officer Donnellon walked toward Mr. Jordan, Officer Jenkins walked out into the roadway and began speaking with Joe Jordan.

22. Officer Jenkins pointed to the skidmarks in the roadway, and told Joe Jordan that the skid marks were a result of the accident.  Mr. Jordan then asked Officer Jenkins how he could tell the skidmarks were from that car, pointing out that there were several differing sets of skidmarks on the roadway.  Officer Donnellon then stated "Sir, you better go away," to which Mr. Jordan stated to both officers, "Well, quit making statements.  If you guys want their statements, let them give their statements."  At that time, Officer Donnellon walked away from Mr. Jordan to another area.

23. Officer Jenkins then walked from his position in the middle of the street toward Mr. Jordan.  As he approached close to Mr. Jordan, he stated "Are you done – good - go!"  Mr. Jordan responded that he was not going anywhere, and that he was "going to stay right here."  Mr. Jordan then turned his attention to his employee on the telephone, asking her to send him the proof of insurance for the truck.  With no further

5

warning, Officer Jenkins stated "put your arm behind your back," and simultaneously tackled Mr. Jordan, grabbing his arm in the process.

24. Because Mr. Jordan was speaking on the phone, he did not hear the officer telling him to put his arm behind his back and, therefore, he did not understand what was happening other than that he was being attacked by Officer Jenkins.

25. As Mr. Jordan fell to the dirt area near the sidewalk, he felt Officer Jenkins over his back attempting to push his face into the scrub grass and dirt. He attempted to protect his face from injury by bracing his right arm on the ground. In this position, Officer Jenkins yelled at Mr. Jordan to put his hands behind his back.

26. Officer Donnellon then came beside Mr. Jordan and kicked Mr. Jordan's right hand out, causing Mr. Jordan's face to plow into the dirt. Officer Donnellon then put his knee and full weight and on the right side of Mr. Jordan's face, pushing the left side of his face into the dirt. Mr. Jordan was subsequently handcuffed.

27. While Mr. Jordan was on the sidewalk speaking to the office, his office recorded the call, transcribed as follows:

    0:02   John: Hey, think I can get Keta on the phone?
    0:07   Woman: Yeah, yeah. Hang on.
    0:10   John: I need her to get me a photograph of a proof of insurance for truck 18
    0:15   Woman: Okay, all right. Hang on.
    0:18   John: So, it's in a three-ring binder.
    0:23   [phone on hold – recording plays]
    1:34   John: [talking to Ofc. Donnellon as he walked by] I'm gonna get them to send me a picture of the proof of insurance real quick on my phone. [phone on hold]
    2:09   John: Yeah, you should go with him.
    2:32   John: Well, are you taking a statement or are you giving a statement?
    2:36   Ofc.: What?

6

| | |
|---|---|
| 2:36 | John: [in raised voice] Okay. Are you taking a statement from them or are you giving a statement? |
| 2:40 | John: Ok. And they're saying that's not the point of impact. That's what you're saying. [Inaudible] witnesses with him. |
| 2:47 | [Officer inaudible] |
| 2:50 | John: Those guys are independent. |
| 2:52 | [Officer inaudible.] |
| 2:54 | John: Okay. [Officer inaudible] I'm just wondering if you're making a statement or are you gonna let them do it? |
| 2:58 | [Officer inaudible, while talking to John for 13 seconds] |
| 3:11 | John: You're way too high strung, man. |
| 3:13 | Ofc.: No, I'm not [inaudible up to minute 3:19]. |
| 3:19 | John: You're way too high strung, man. |
| 3:21 | Keta: Hey, John. It's Keta. |
| 3:23 | Ofc.: I'm not going to give your […  inaudible] because of your attitude and your behavior. You are being a complete… |
| 3:28 | John: I need a proof of insurance. |
| 3:32 | Ofc.: … you are being a complete disgrace to your son. |
| 3:33 | John: [in raised voice] Don't shoot me, man. |
| 3:35 | Ofc.: That's a great way to show your son how to act. |
| 3:37 | John: Don't shoot me, man. |
| 3:38 | Ofc.: You're a terrible father. |
| 3:39 | John: Don't shoot me. |
| 3:40 | Ofc.: An embarrassment. |
| 3:41 | John: [laughing] Can you get me, send me a proof of insurance? |
| 3:48 | Keta: Am I looking at these binders that say? |
| 3:49 | John: [in raised voice] How can you tell those skidmarks are from that car? This whole road is full of skidmarks. |
| 3:54 | Ofc.: Sir, you better go away. |
| 3:56 | Keta: John. |
| 3:56 | John: [in raised voice] Quit making statements. If you guys want their statements. |
| 3:57 | [Ofc. inaudible, in a raised voice.] |
| 4:00 | John: [in raised voice] If you guys want their statements, let them give their statements. |
| 4:03 | Ofc.: [Ofc. Jenkins, near to John] Are you done?<br>John: Yeah.<br>Ofc.: Good. Go. Go. |
| 4:06 | John: I'm not going anywhere. I'm going to stay right here |
| 4:11 | Ofc.: [Inaudible.] Put your hands behind your back. |
| 4:12 | John: Hey can you send me a proof of insurance on 18? |
| 4:15 | Keta: On 18. Okay. |
| 4:16 | [sounds of scuffle] |
| 4:19 | Ofc.: Put your hands behind your back. |

    4:24  Ofc.: Put your hands behind your back.
    4:29  Keta: Hello? 18, 18. What number are you? You're 19. You're Honda. Give me one second.
    4:49  Ofc.: Put your hands behind your back.
    4:54  John: You put your foot in my face.
            Ofc.: No, I didn't.
            John: You got me braced up. You got me….
    5:13  Keta: I don't know where 18 is. There's 16. Where is truck 18? There's truck 19.
    5:25  [Keta mumbling; inaudible background voices at scene]
    6:06  Sarah: [who picks up John's phone] Hello?
    6:07  Keta: Hello.
    6:09  Sarah: This is Sarah.
    6:09  Keta: Hey, this is Keta.

28. As can be seen from this transcript, up until minute 4:03, Mr. Jordan and the officers were talking back and forth, raising their voices to be heard over the distance, in an active discussion about the way the investigation was being handled. In the 8 seconds from minute 4:03 to minute 4:11, Officer Jenkins decided to arrest Mr. Jordan simply because Mr. Jordan was exercising his right to protest what the officers were saying and doing. Mr. Jordan never interfered with, nor touched, either officer. It has been clearly established in this circuit that there is no probable cause to arrest for obstructing a police officer merely because of "verbal opposition." **See *Kaufman v. Higgs***, 697 F.3d 1297, 1302 (10th Cir. 2012), *relying upon* ***Dempsey v. People***, 117 P.3d 800, 810-11 (Colo. 2005).

29. Nonetheless, the officers charged Mr. Jordan with obstruction of justice, under CRS §18-8-104, and with resisting arrest, under CRS §18-8-103(1)(a) and (b). The district attorney declined to prosecute those charges, finding there was no reasonable likelihood of a successful prosecution, and dismissed them.

30. Presumably, Mr. Jordan obstructed justice by protesting the actions of the officers. He could not have obstructed justice by failing to leave the scene, as Officer Jenkins requested, because he was in the act of aiding the officers by getting the proof of insurance.

31. Allegedly, he resisted arrest by failing to put his hands behind his back. However, he did not know the officer was arresting him because the officer never stated Mr. Jordan was under arrest. Officer Jenkins knew that Mr. Jordan was speaking to his office at the time Officer Jenkins seized Mr. Jordan and the officer knew Mr. Jordan was legitimately paying attention to the call and not to the officer.

32. Officer Jenkins wrote two reports in which he misrepresented the facts to paint a picture that he was more reasonable when he seized Mr. Jordan than the truth would support. He wrote that he told Mr. Jordan that he would simply detain Mr. Jordan in his police vehicle while he continued the investigation. He did not tell Mr. Jordan this. He stated that he warned Mr. Jordan three times that he would arrest him for interference if he did not stop. He did not say this. He said that, before the arrest, Mr. Jordan had asked his nephew Joe to record the arrest with his phone. This did not occur. Finally, he wrote that Mr. Jordan was yelling so loud that interviewees could not understand Mr. Jenkin's questions. That statement was incorrect.

33. After being searched, Mr. Jordan was placed in a police car, and eventually transported to the Adams County jail. Even though Mr. Jordan had sufficient cash in his pocket to pay the bail set for his release, he was kept at the jail for hours for

no apparent reason other than to deny his freedom. Upon his arrival at a second jail location, he was searched again and told to remove his clothing.

34. Mr. Jordan is of the Mormon faith. Each morning he abides by the teachings of his faith, and dresses himself in religiously significant clothing. Specifically, he dons religious undergarments, which, by his teachings, he is not to remove.

35. Mr. Jordan asked to keep his religious clothing on, but was told by the jail staff that he had no choice but to remove them and put on a jail jumpsuit. Believing he would be attacked a second time, Mr. Jordan was forced to remove his clothing and to wear the jumpsuit without underwear.

### FIRST CLAIM – excessive force under §1983

36. Mr. Jordan incorporates all preceding paragraphs of this complaint as if fully set forth herein.

37. At all relevant times hereto, the two individual defendants were acting under the color of state law as Adams County Sheriff's officers.

38. Mr. Jordan had a fourth-amendment interest against being victimized by use of excessive force at the hands of law enforcement.

39. Defendants Donnellon and Jenkins subjected Mr. Jordan to force which, judged from the perspective of a reasonable officer on the scene, was unreasonable.

40. At all times relevant hereto, Mr. Jordan posed no threat to any law enforcement officers.

10

41. At all times relevant hereto, Mr. Jordan did not attempt to evade arrest. He was surprised by the initial physical contact from Officer Jenkins because he was talking on the phone to his office.

42. The individual defendants had no justification for slamming Mr. Jordan to the ground, kicking his hands out from under him, forcing his arms behind his back, and placing him in handcuffs as they effectuated an illegal arrest. Under the circumstances, the individual defendants had no justification to use *any* physical force against Mr. Jordan.

43. These actions violated Mr. Jordan's fourth-amendment right to be free from unreasonable seizure and constitute a claim under 42 USC §1983. The actions caused Mr. Jordan to sustain physical and mental harm and were a cause of the individual defendants' subsequent initiation of false and unfounded criminal charges against Mr. Jordan.

44. Mr. Jordan is entitled to compensation for his injuries under §1983 and is entitled to his attorney's fees under 42 USC §1988.

### SECOND CLAIM – unlawful seizure under §1983

45. Mr. Jordan incorporates all other paragraphs as if fully set forth herein.

46. At all relevant times hereto, the individual defendants were acting under the color of state law in their capacities as Adams County Sheriff's officers.

47. Mr. Jordan has a protected fourth-amendment interest against being unlawfully seized by law enforcement without probable cause. Defendants Donnellon and Jenkins seized Mr. Jordan without probable cause.

48. Mr. Jordan's right to observe the police misconduct and to protest same was clearly established under the First Amendment. **See**, *e.g.*, ***City of Houston v. Hill***, 42 U.S. 451 (1987).

49. The actions of defendants Donallon and Jenkins were the proximate cause of Mr. Jordan's emotional distress at being seized and detained in jail. This violated his first- and fourth-amendment rights and constitutes a claim under §1983. He is entitled under §1983 for compensation for his physical and mental injuries and is entitled to his attorney's fees in prosecuting this action under §1988.

### THIRD CLAIM – malicious prosecution under §1983

50. Mr. Jordan incorporates all other paragraphs as if fully set forth herein.

51. At all relevant times hereto, the individual defendants were acting under the color of state law in their capacities as Adams County Sheriff's officers.

52. Mr. Jordan has a protected fourth-amendment interest against being prosecuted by law and force when no probable cause exists to support his prosecution.

53. The individual defendants directly caused Mr. Jordan's confinement and prosecution.

54. As detailed herein, defendant Jenkins falsified and mischaracterized what transpired on September 6, 2018, in his written reports in order to support the baseless prosecution of Mr. Jordan.

55. The unfounded criminal case against Mr. Jordan terminated in Mr. Jordan's favor when the district attorney dismissed all charges against him.

56. The actions of Defendants Donnellon and Jenkins were the proximate cause of Mr. Jordan's unlawful prosecution and of his injuries, losses, and damages, including attorney's fees incurred in defending himself.

57. These defendants acted with malice because they did not want Mr. Jordan to interfere with their improper questioning of his nephew Joe, even though Mr. Jordan had a first amendment right to do so.

58. These actions constitute a claim under §1983 for which Mr. Jordan is entitled to recover damages for his physical and mental injuries and for the cost of his criminal defense.  He is also entitled, under §1988, to recover his attorney's fees for prosecuting this claim.

**FOURTH CLAIM – violation of religious freedom under §1983**

59. Mr. Jordan incorporates the above as if fully set forth herein.

60. Mr. Jordan had a sincerely-held religious belief in wearing his Mormon undergarments at all times.  The jail did not have any legitimate penological interest in requiring him to remove his undergarments.  When the jail required him to remove his Mormon undergarments, this violated his First Amendment right to freedom of religion.

61. The officer who required Mr. Jordan to remove his undergarments was operating pursuant to the official policy of the Sheriff's office.  This policy reflected deliberate indifference to Mr. Jordan's religious rights and constitutes a claim under 42 USC §1983 against the Sheriff's office.

62. Mr. Jordan suffered emotional pain and suffering by this constitutional violation and is entitled to recover for these under §1983.  He is also entitled to recover his attorney's fees for prosecuting this claim under §1988.

WHEREFORE, plaintiff John Jordan respectfully requests that this court enter judgment in his favor and for interest, costs, attorneys' fees, and such other relief as this court may deem proper.

Plaintiff requests trial to a jury.

Respectfully submitted this August 4, 2020.

By: s/     *Robert M. Liechty*
Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
Fax: (303) 861-2746
Email:  rliechty@crossliechty.com

By: *s/     Terrell M. Gaines*
Terrell M. Gaines
1800 W. Littleton Blvd.
Littleton, Colorado  80120
Tel: 303-349-6162
Fax:  303-749-0408
Email: attorneygaines@gmail.com
ATTORNEYS FOR PLAINTIFF

Address of plaintiff:
94 S. Tom Bay Rd.
Bennett, CO 80102