**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02297-STV

JOHN D. JORDAN,

      Plaintiff,

v.

ADAMS COUNTY SHERIFF'S OFFICE,
DEPUTY CHAD JENKINS, and
DEPUTY MICHAEL DONNELLON,

      Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

      This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [#18] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##6, 7] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      Background

This case arises out of a 2018 encounter between Plaintiff and two Adams County Sheriff's Deputies investigating an accident involving Plaintiff's nephew.  [*See generally* #1]  The undisputed facts are as follows.[1]

On September 6, 2018, seventeen year-old J.J. was involved in an automobile accident at the intersection of Palmer Avenue and 6th Street in the town of Bennett, Colorado.  [##1, ¶ 11; 9, ¶ 11]  Plaintiff is J.J.'s uncle, and J.J. was driving Plaintiff's company truck.  [#23-1, SOF1, 19]  Plaintiff had arrived at the scene of the accident and was calling his office to obtain the truck's insurance information because J.J. could not find the insurance card.  [*Id.* at SOF19]

Defendant Deputy Michael Donnellon was the first officer to arrive on the scene, and he began questioning J.J. about the accident.  [##1, ¶¶ 13-14; 9, ¶¶ 13-14]  At some point, Defendant Deputy Chad Jenkins arrived.  [##1, ¶ 16; 9, ¶ 16]  During the subsequent encounter, Plaintiff remained on the sidewalk, approximately thirty feet away from where the officers were speaking with J.J.  [#23-1, SOF20]

Plaintiff was irritated at the officers and told the officers to allow J.J. to make a statement and stop telling J.J. how the accident occurred.  [*Id*. at SOF2]  In relevant part, the following exchange then took place between the deputies and Plaintiff:

> **Plaintiff:** Well, are you taking a statement or are you giving a statement?
> **Deputy Donnellon:** What?

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendant's reply in support of the Motion.  [#23-1]  The Court refers to the sequentially numbered facts set forth in the Statement of Facts as "SOF#."  The Court periodically cites directly to the exhibits cited by the parties in the Statement of Facts to provide additional context.

**Plaintiff** [in raised voice]: Okay.  Are you taking a statement from them or are you giving a statement?  Okay.  And they're saying that's not the point of impact.  That's what you're saying.  [Inaudible] witnesses with him.

**Deputy Donnellon:** [Inaudible]

**Plaintiff:** Those guys are independent.

**Deputy Donnellon:** [Inaudible]

**Plaintiff:** Okay.  I'm just wondering if you're making a statement or are you gonna let them do it?

**Deputy Donnellon:** [Inaudible]

**Plaintiff:** You're way too high strung, man.

**Deputy Donnellon:** No, I'm not.

**Plaintiff:** You're way too high strung, man.

**Deputy Donnellon:** I'm not going to give your [inaudible] because of your attitude and your behavior.  You are being a complete . . . you are a complete disgrace to your son.

**Plaintiff** [in raised voice]: Don't shoot me, man.

**Deputy Donnellon:** That's a great way to show your son how to act.

**Plaintiff:** Don't shoot me, man.

**Deputy Donnellon:** You're a terrible father.

**Plaintiff:** Don't shoot me.

**Deputy Donnellon:** An embarrassment.

**Plaintiff** [in raised voice]: How can you tell those skidmarks are from that car?  This whole road is full of skidmarks.

**Deputy Jenkins:** Sir, you better go away.

**Plaintiff** [in raised voice]: Quit making statements.  If you guys want their statements.

**Deputy Jenkins** [in raised voice]: [Inaudible]

**Plaintiff:** If you guys want their statements, let them give their statements.

**Deputy Jenkins:** Are you done?

**Plaintiff:** Yeah.

**Deputy Jenkins:** Good.  Go.  Go.

**Plaintiff:** I'm not going anywhere.  I'm going to stay right here.

**Deputy Jenkins:** [Inaudible] Put your hands behind your back.

[*Id.* at SOF29; *see also* SOF21 (describing which officer is speaking during the encounter)][2]  At this point, Deputy Jenkins grabbed Plaintiff's arm and applied weight to

---

[2] In Defendants' response to Plaintiff's separate fact containing this transcript of the recording, Defendants state that "[t]he transcription provided by Plaintiff is not certified to be true and correct by a shorthand reporter."  [*Id.* at SOF29]  However, Defendants do not appear to actually dispute the content of the transcription provided by Plaintiff, and based upon the Court's review of both the transcript and the recording, the transcript appears to accurately reflect the content of the encounter between Plaintiffs and the officers.  [*Id.*; *see also* #21]

subdue Plaintiff and take Plaintiff to the ground.  [*Id.* at SOF6-7, 25, 29]  Plaintiff attempted to protect his face from injury by putting out his right hand and bracing his right arm on the ground.  [*Id.* at SOF7, 26]  Plaintiff alleges that Deputy Donnellon then kicked out Plaintiff's right hand, causing Plaintiff's face to plow into the dirt.  [*Id.* at SOF7, 26; *see also* #1, ¶ 26]  The officers then were able to handcuff Plaintiff.  [#23-1, SOF7]  Once they handcuffed Plaintiff, Deputies Jenkins and Donnellon did not use any further force against Plaintiff.[3]  [*Id.* at SOF8]   Plaintiff was arrested and charged with obstruction of justice and resisting arrest.[4]  [*Id.* at SOF9]

At the time of his arrest, Plaintiff was wearing specific undergarments as part of his sincerely held Mormon religious beliefs.  [*Id.* at SOF11, 17]  The undergarments are distributed through Plaintiff's church, and the Adams County Sheriff's Office ("ACSO") could not have independently obtained the garments.  [*Id.* at SOF14]  During booking at the Adams County Detention Facility ("ACDF"), Plaintiff told the guards that his Mormon faith requires him to wear the undergarments at all times.  [*Id.* at SOF17]  Nonetheless, the guards required Plaintiff to change out of the garments and into a standard issue prison uniform.[5]  [*Id.* at SOF10, 15, 17]  Plaintiff was not permitted to retain his religious garments because ACSO's inmate handbook states that inmates are not permitted to keep any of their own personal items when booked into the ACDF.  [*Id.* at SOF18]

---

[3] During the course of the handcuffing, Deputy Jenkins instructed Plaintiff on three additional occasions to put his hands behind his back.  [*Id.* at SOF29]

[4] The prosecutor ultimately dismissed all charges against Plaintiff.  [*Id.* at SOF30]

[5] Plaintiff was searched before changing into the standard issue prison uniform.  [*Id.* at SOF10]  ACSO has a written policy that states that custody searches are to be conducted "in a professional and respectful manner and in the least intrusive manner possible consistent with security needs."  [*Id.* at SOF16]

4

On August 4, 2020, Plaintiff initiated this lawsuit.  [#1]  The Complaint brings four claims, all pursuant to 42 U.S.C. § 1983:  (1) excessive force [*id.* at ¶¶ 36-44]; (2) unlawful seizure [*id.* at ¶¶ 45-49]; (3) malicious prosecution [*id.* at ¶¶ 50-58]; and (4) violation of religious freedom [*id.* at ¶¶ 59-62].  On July 9, 2021, Defendants filed the instant Motion seeking summary judgment on all four claims.  [#18] Plaintiff has responded to the Motion [#22], and Defendants have replied [#23].

## II.    LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994).  If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or defense upon which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict."  *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact

depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party." *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

## III.    ANALYSIS

Through the Motion, Defendants seek summary judgment on each of Plaintiff's claims. [#18] Specifically, Deputies Jenkins and Donnellon maintain that they are entitled to qualified immunity on Plaintiff's first three claims, and Defendant ACSO argues that it cannot be held liable on Plaintiff's fourth claim because Plaintiff has failed to establish that ACSO had a policy or custom that caused injury to Plaintiff. [*Id.*] The Court begins with an analysis of the qualified immunity doctrine, then turns to each of Plaintiff's claims.

### A.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Once a defense of qualified immunity is asserted, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'"  *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis in original)).  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

The requirement that the right be clearly established presents a "demanding standard" intended to ensure the protection of "all but the plainly incompetent or those who knowingly violate the law."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In determining whether the constitutional right was clearly established at the time of the misconduct, the Tenth Circuit has explained:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate.  The dispositive question is whether the violative nature of the *particular conduct* is clearly established.  In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted) (emphasis in original).  The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n.8.  The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'"  *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).  "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context."  *Id.* (quotation omitted).

Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.  And, in certain cases, "a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all."  *Id.* at 239.

### B.  Claim One – Excessive Force

Claim One alleges that Deputies Jenkins and Donnellon applied excessive force in arresting Plaintiff.[6]  [#1, ¶¶ 36-44]  "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "The reasonableness of the use of force is evaluated under an 'objective' inquiry that pays 'careful attention to the facts and circumstances of each particular case.'"  *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (quoting *Graham*, 490 U.S. at 396).  In particular, *Graham* identified the following factors the Court should consider:  "[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  "The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure."  *Mendez*, 137 S. Ct. at 1546 (quotation omitted).

Here, the Court need not determine whether Deputies Jenkins and Donnellon applied excessive force in arresting Plaintiff because Plaintiff has failed to sustain his burden to identify a clearly established right regarding his excessive force claim and therefore fails to overcome the second prong of the deputies' qualified immunity defense.

---

[6] "Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting under color of state law."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (quoting 42 U.S.C. § 1983).  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.

*Quinn*, 780 F.3d at 1004 ("[T]he onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct."  (quotation omitted)).   The only case cited by Plaintiff in support of his argument that the unlawfulness of Defendants' use of force was clearly established is *Cortez v. McCauley*.   [#22 at 9-10]   *Cortez* involved an excessive force claim brought by two plaintiffs, Rick and Tina Cortez.  478 F.3d 1108, 1113-14 (10th Cir. 2007).  Plaintiff Rick Cortez had been the subject of an investigation for sexual assault on a child.  *Id.* at 1113.  Plaintiff Tina Cortez was Rick Cortez's wife.  *Id.* at 1113 n.1.

At approximately 1:00 a.m., the officers made contact with the plaintiffs at their home.  *Id.* at 1113.  Wearing only a pair of shorts, Rick Cortez opened the front door and saw two police officers through the closed screen door.  *Id.*  He repeatedly inquired about what was happening.  *Id.*  The officers did not answer and instead instructed him to exit the house.  *Id.*  As he began to exit, the officers seized him, handcuffed him, and placed him in the back of a patrol car for questioning.  *Id.*  As Rick Cortez was being handcuffed and escorted to the patrol car, Tina Cortez headed to the bedroom to make a telephone call.  *Id.*  Before she could complete the call, an officer entered the home, seized her by the arm, and physically escorted her from the home.  *Id.*  The officer placed her in a separate patrol car and subjected her to questioning.  *Id.*

Both Rick and Tina Cortez filed suit alleging several claims against the officers, including use of excessive force.  *Id.* at 1112.  With respect to Rick Cortez, the Tenth Circuit found that he had not stated a claim for excessive force.  *Id.* at 1129.  The *Cortez* court acknowledged that Mr. Cortez was cooperative and did not pose an immediate threat to the safety of the defendant officers.  *Id.* at 1128.  It further acknowledged that,

despite this cooperation, Mr. Cortez was "grabbed and pulled out of the house" by one of the officers, placed in handcuffs that he complained were too tight, and "haul[ed] (clad only in shorts) into the patrol car in the middle of the night without any explanation." *Id.* at 1128-29.   Nonetheless, because Rick Cortez had failed to present evidence of an actual injury, the *Cortez* court found that he had failed to state an excessive force claim. *Id.* at 1129.   Given that determination, this Court fails to see how the *Cortez* court's discussion of Rick Cortez's excessive force claim could clearly establish the unlawfulness of Defendant's use of force in the instant case.[7]

With respect to Tina Cortez's excessive forced claim,[8] the *Cortez* court found that she had "alleged a constitutional violation concerning excessive force that survives summary judgment."  478 F.3d at 1130.  In reaching this conclusion, however, the *Cortez* court emphasized that Tina Cortez was subject only to an investigative detention, "was never the target of the investigation, [and] no evidence suggest[ed] that a reasonable law enforcement officer would suspect she posed a threat."  *Id.*  Given that Tina Cortez "did not resist and was escorted to the locked patrol car," the *Cortez* court concluded that "no evidence suggest[ed] that [the officers'] level of intrusiveness was warranted for officer safety concerns."  *Id.*

The facts of Tina Cortez's case and Plaintiff's case are too dissimilar to allow *Cortez* to clearly establish the unlawfulness of Defendants' use of force against Plaintiff. Tina Cortez was merely subject to an investigative detention whereas Plaintiff was under

_____

[7] Plaintiff, for his part, does not compare the facts in *Cortez* to Plaintiff's arrest, nor does he provide any analysis of the *Cortez* court's excessive force determination.
[8] Plaintiff only cites to the portion of the *Cortez* opinion discussing Rick Cortez's claim. [#22 at 9-10]  Nonetheless, the Court will also analyze the *Cortez* court's discussion of Tina Cortez's excessive force claim.

arrest.  Similarly, Tina Cortez did not resist and allowed officers to escort her to the locked patrol car, whereas Plaintiff refused to put his hands behind his back as ordered.[9]  Given the dissimilarity of the two cases, the Court concludes that *Cortez* did not clearly establish the unlawfulness of Defendants' arrest.  Thus, because *Cortez* is the only case Plaintiff cites for the clearly established prong of Defendants' qualified immunity defense,[10] the Court finds that Plaintiff has not satisfied his burden of overcoming that defense and, accordingly, the Motion is GRANTED as to Claim One.

## C.  Unlawful Seizure/Malicious Prosecution

Claims Two and Three—for unlawful seizure and malicious prosecution—are also alleged against Deputies Jenkins and Donnellon.  [#1, ¶¶ 45-58]  "[C]ourts . . . use[ ] the common law of torts as a 'starting point' for determining the contours of claims of constitutional violations under § 1983."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004) (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978).  However, "[a]lthough the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation."  *Id.* at 1289.

Colorado common law prescribes only three elements for a claim of false arrest:[11] "(1)  The defendant intended to restrict the plaintiff's freedom of movement; (2) The

---

[9] The Court finds unpersuasive Plaintiff's argument that "it was impossible for [him] to comply with the request to put both his hands behind his back [because] he was talking on the phone."  [#22 at 9]  He could have simply ended his conversation and complied with Deputy Jenkins' order.

[10] Plaintiff does not analyze the *Graham* factors or argue that Defendants' violation of the Fourth Amendment is clear from *Graham* itself.

[11] Plaintiff's second claim is entitled "unlawful seizure under § 1983" and appears to be premised upon his arrest.  [#1 at ¶¶45-49]  Accordingly, the Court analyzes Claim Two as a false arrest claim.

defendant, directly or indirectly, restricted the plaintiff's freedom of movement for a period of time, no matter how short; and (3) The plaintiff was aware that [her] freedom of movement was restricted."  Colo. Jury Instr.-Civ. ("CJI-Civ.") § 21:1 (2018).  Even if these three elements are met, Defendants can defeat a false arrest claim if there was probable cause for the arrest.[12]

A Section 1983 malicious prosecution[13] claim consists of the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the

---

[12] Under Colorado common law, lack of probable cause is not an element of the false arrest claim but rather is considered in connection with the affirmative defense of privilege.  *See Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2010 WL 3023805, at *5 (citing CJI-Civ. § 21:11 ("Privilege of Peace Officer to Arrest without a Warrant")).  The Court acknowledges, however, that the common law serves only as "a guidepost for defining the constitutional cause of action," *Pierce*, 359 F.3d at 1289, and the Tenth Circuit has often defined a claim for false arrest under Section 1983 simply as an arrest made without probable cause.  *See, e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) ("In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime"); *Cottrell v. Kaysville City*, 994 F.2d 730, 733 (10th Cir. 1993) ("A plaintiff may recover damages under § 1983 for wrongful arrest if she shows she was arrested without probable cause.").  Although this would indicate that lack of probable cause is an element of the claim that must be alleged and proven by the plaintiff, in other decisions, the Tenth Circuit has indicated that the defendant has the burden of proving probable cause for the arrest.  *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("The burden of going forward with evidence establishing the existence of probable cause is on the defendant in a 1983 action."); *Martin v. Duffie*, 463 F.2d 464, 468 (10th Cir. 1972) (holding that defenses of good faith and privilege available at common law are available in Section 1983 cases, but "must be put forward by the officers as defenses").  For purposes of deciding the Motion, however, the Court need not resolve whether probable cause is an essential element of the claim on which Plaintiff bears the burden of proof or whether it is an affirmative defense on which Defendants bear the burden of proof.  Even if construed as an affirmative defense, Defendants have raised it and offered evidence in support of their contention that probable cause existed.

[13] "[A] false imprisonment ends once the victim becomes held pursuant to [legal] process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (emphasis omitted).  "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more."  *Id*. at 390 (quotation omitted).  "From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."  *Id*. (quotation omitted).

original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). The Tenth Circuit has "repeatedly recognized" that "the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'" *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (quoting *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)).

Here, Defendants argue that they are entitled to qualified immunity and focus their argument on the probable cause element of Plaintiff's false arrest and malicious prosecution claims. [#18 at 9-11] "In the context of a qualified immunity defense on an unlawful arrest claim, [the Court] ascertain[s] whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct."[14] *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quotation omitted). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id*. (citing *Cortez*, 478 F.3d at 1120). In other words, a defendant is entitled to qualified immunity if he "*could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis in original) (quotation omitted).

---

[14] As with Plaintiff's excessive force claim, because the Court finds that Plaintiff has failed to identify a clearly established right allegedly violated by Deputies Jenkins and Donnellon with respect to Plaintiff's unlawful seizure and malicious prosecution claims, the Court does not address the first prong of the qualified immunity analysis—*i.e.*, whether Plaintiff has sufficiently alleged a constitutional violation.

The Court concludes that Defendants have established arguable probable cause. In determining whether arguable probable cause existed under clearly established law, this Court must look to interpretation of the Colorado criminal statute under which Plaintiff was arrested. *Kaufman v. Higgs*, 697 F.3d 1297, 1300-01 (10th Cir. 2012) ("The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases. . . . But the precise scope of that right uniquely depends on the contours of a state's substantive criminal law in this case because the Defendants claim to have had probable cause based on a state criminal statute." (citation omitted)).  Colorado law provides:

> A person commits obstructing a peace officer . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority.

Colo. Rev. Stat. § 18-8-104.  Here, there is no indication that Plaintiff used or threatened violence.  The question, therefore, is whether there was arguable probable cause to believe that Plaintiff used or threatened "physical interference or an obstacle."

The Colorado Supreme Court has made clear that the "obstacle or physical interference may not be merely verbal opposition."  *Dempsey v. People*, 117 P.3d 800, 810 (Colo. 2005).  And "mere remonstration does not constitute obstruction."  *Id.* at 811. Instead, "a combination of statements and acts by the defendant, including threats of physical interference or interposition of an obstacle" is required.  *Id.*

Here, Defendants argue that two actions by Plaintiff contributed to their probable cause determination:   (1) Plaintiff's yelling, which they assert prevented them from interviewing witnesses, and (2) Plaintiff's refusal to leave the scene when ordered to do

so.  [#18 at 10]  Defendants have submitted Deputy Jenkins' police report[15] in which he asserts that Plaintiff's actions forced Deputy Donnellson to stop his portion of the investigation.  [#18-2 at 3]  Deputy Jenkins further asserts that Plaintiff's yelling was so loud that the officers could neither be heard by witnesses, nor hear witnesses' answers to their questions.  [*Id.*]  Finally, Deputy Jenkins asserts that Plaintiff refused to leave the area when ordered to do so.  [*Id.*]  The Court thus concludes that these facts, if true, provided the deputies with arguable probable cause to believe that Plaintiff had "interpos[ed] . . .an obstacle" to their investigation.  *Dempsey*, 117 P.3d at 810; *see also id*. at 812-813 (looking to the totality of the circumstances to determine whether plaintiff presented an obstacle or interference to officers).

The only evidence Plaintiff submits in opposition to Deputy Jenkins' observation that Plaintiff interfered with the deputies' ability to investigate the incident is a declaration by J.J. and an audio recording of the incident.  [#23-1 at SOF3 (citing #22-3)]  In the declaration, J.J. states:  "Although the officer and my uncle were yelling back and forth, my uncle never interfered with the officer's ability to hear what I was saying, principally because the officer was not allowing me to say much of anything."  [#22-3]  J.J.'s

---

[15] "In a civil case, police reports may be admissible as public records under rule 803(8)(A)(ii) of the Federal Rules of Evidence."  *Walker v. Spina*, No. CV 17-0991 JB\SCY, 2018 WL 6519133, at *10 (D.N.M. Dec. 11, 2018) (quotation omitted).  "Rule 803(8)(A)(ii) renders admissible 'a record or statement of a public office' setting out 'a matter observed while under a legal duty to report,' although it excludes from the exception, 'in a criminal case, a matter observed by law-enforcement personnel.'"  *Id.* (quoting Fed. R. Evid. 803(8)(A)(ii)).  "This exception, however, covers only information that the officer observed and recorded in the police report, and not information that the officer received from third parties."  *Id.* (quotation omitted).  "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."  *Id.*

conclusory statement that Plaintiff did not interfere with the deputies is insufficient to create a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."). And the remainder of J.J.'s statement appears to concede that Plaintiff was yelling loud enough to impact the deputies' ability to hear, but simply argues that the officers were not allowing J.J. to tell his version of events. [#22-3 (stating that Plaintiff "never interfered with the officer's ability to hear what [J.J.] was saying, *principally* because the officer was not allowing [J.J.] to say much of anything" (emphasis added))] What's more, in the audio recording Plaintiff can clearly be heard yelling loudly at the officers. [*See generally* #22-2; *see also* #23-1 SOF 29] Thus, the Court concludes that the undisputed facts demonstrate that Plaintiff's yelling and refusal to leave the scene interfered with the deputies' ability to conduct their interviews. This interference constituted arguable probable cause to arrest Plaintiff for obstructing a peace officer.[16]

Plaintiff's response barely addresses the clearly established prong of the qualified immunity analysis for these claims. [*See generally* #22] The response neither addresses the above arguable probable cause standard nor attempts to identify an on-point case

---

[16] "Where an arrest is predicated on multiple charges, the sufficiency of probable cause with regard to any of the charges defeats any claim arising from the fact that other charges may not have been supported by probable cause." *Martinez v. Lochbuie Police Dep't*, No. 04-CV-00020-MSK-BNB, 2006 WL 295391, at *3 (D. Colo. Feb. 6, 2006); *see also Morales v. Herrera*, No. 215CV00662MCALAM, 2017 WL 4251683, at *4 (D.N.M. Sept. 25, 2017), *aff'd*, 778 F. App'x 600 (10th Cir. 2019) ("When a suspect is arrested for multiple charges, an officer is immune if there is probable cause to arrest for a single charge."). "This is so because '[a]n arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is *a* reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed.'" *Morales*, 2017 WL 4251683, at *4 (quoting *Holmes v. Vill. of Hoffman Estates,* 511 F.3d 673, 682 (7th Cir. 2007)) (emphasis in original).

that would define the clearly established law with the specificity required by Supreme Court and Tenth Circuit precedent.  And of the four cases cited by Plaintiff in his qualified immunity analysis, two are cited for the unremarkable proposition that summary judgment should be denied when there are disputed facts related to the qualified immunity determination.  [#22 at 7 (citing *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Granieri v. Burnham*, No. 2:03 CV 771 DAK, 2004 WL 966300, at *5 (D. Utah Apr. 28, 2004))]

The third case cited by Plaintiff is *Cortez*.  [#22 at 7-8]  In *Cortez*, the officers arrested Rick Cortez in the middle of the night for sexually assaulting a child, despite never interviewing the alleged victim, her mother, or the medical staff who examined her, or even inspecting the girl's clothing for signs of a possible sexual assault.  *Cortez*, 478 F.3d at 1113, 1116-17.  Indeed, the officers "conducted no investigation" but instead "relied on the flimsiest information conveyed by telephone call."  *Id.* at 1117-18.  Thus, *Cortez* has no application to the establishment of the clearly defined law here, where the deputies' probable cause determination was based entirely upon their own observations of Plaintiff's conduct.  *Wesby*, 138 S. Ct. at 590 (stating that the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced" (quotation omitted)).

The final case is *Stearns v. Clarkson*.  615 F.3d 1278 (10th Cir. 2010).  In *Stearns*, the plaintiff went to an officer's home in the middle of the night, was confronted some hours later by that officer, and ultimately was arrested under a disorderly conduct statute for being "loud, belligerent, smell[ing] of alcohol, and point[ing] his finger at [the officer]" during the confrontation.  *Id*. at 1280-81, 1283.  The *Stearns* court determined that the

plaintiff's "use of profanity and his criticism of police did not provide probable cause to arrest him for disorderly conduct" because those actions did not amount to fighting words or threats under the Kansas disorderly conduct statute. *Id*. at 1283-84. Thus, unlike in this case, the *Stearns* court considered neither the Colorado obstruction statute, nor allegations that the plaintiff interfered with an ongoing investigation. *Stearns* therefore also fails to define clearly established law sufficiently analogous to the facts of this case.

Plaintiff has failed to meet his burden of demonstrating on Claims Two and Three that the law was clearly established at the time of the challenged conduct and Defendants are entitled to summary judgement as to these claims. *Quinn*, 780 F.3d at 1004. Accordingly, Defendant's Motion is GRANTED as to Claims Two and Three.

### D.  Violation of Religious Freedom

Finally, Claim Four alleges that ACSO violated Plaintiff's First Amendment right to religious freedom by prohibiting him from wearing his religious undergarments at the jail. [#1, ¶¶ 59-62] Defendants argue that Plaintiff "cannot establish that there was some policy or custom in existence of Adam's County that directly caused injury to Plaintiff." [#18 at 12] The Court disagrees.

 "[M]unicipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff." *Fofana v. Jefferson Cnty. Sheriff's*, No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Instead, to establish a county's liability, the plaintiff must demonstrate that a municipal policy or custom directly caused his injury. *Id.* "A challenged practice may be deemed an official policy or custom for § 1983 municipal-

liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). After identifying an official policy or custom, the plaintiff must demonstrate causation by showing that the policy or custom "is the moving force behind the injury alleged." *Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (same). Finally, the plaintiff must demonstrate "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Cacioppo*, 528 F. App'x at 931 (quoting *Schneider*, 717 F.3d at 769).

Here, it is undisputed that the ACSO's "inmate handbook says that inmates are not permitted to keep any of their own personal clothing or items when booked into the Adams County Detention Facility" and that "[p]ersonal clothing of any kind is not permitted in the jail." [#23-1 at SOF18] And while the handbook does indicate that the ACDF permits inmates to practice their religion, there is nothing in the handbook—or any other evidence presented by Defendants—that would indicate that an exception to the rule prohibiting personal clothing exists for religious undergarments. Thus, Plaintiff has demonstrated that ACSO's official policy prohibiting inmates from keeping personal clothing caused the ACDF guards to prohibit Plaintiff from retaining his religious undergarments.[17] Accordingly, Defendants' Motion is DENIED as to Claim Four.

---

[17] In their reply, Defendants argue that the policy was related to a legitimate penological interest, and therefore did not violate Plaintiff's constitutional rights. [#23 at 7-10] But Defendants did not raise this argument in their Motion and "arguments raised for the first

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [#18] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Motion is **GRANTED** as to Claims One, Two, and Three, and Judgment shall enter in favor of Defendants on those claims.  The Motion is **DENIED** as to Claim Four, and Claim Four shall proceed to trial against Defendant ACSO.

DATED:  January 17, 2022                    BY THE COURT:

                                            s/Scott T. Varholak_____
                                            United States Magistrate Judge

_____

time in a reply brief are generally deemed waived."  *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).  Indeed, it would be unfair to grant summary judgment to Defendants based upon an issue not raised in their Motion and therefore not responded to by Plaintiff.  *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) ("When a party moves for summary judgment on Ground A, his opponent is not required to respond to Ground B—a ground the movant might have presented but did not.").