IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-02297-STV

JOHN D. JORDAN,

Plaintiff,

vs.

ADAMS COUNTY SHERIFF'S OFFICE,
DEPUTY CHAD JENKINS, and
DEPUTY MICHAEL DONNELLON,

Defendants.

---

**MOTION FOR DETERMINATION OF ATTORNEYS FEES**

---

This matter concerns a dispute between counsel Liechty and plaintiff Jordan regarding the distribution of plaintiff's settlement proceeds; hence, only co-counsel Gaines and plaintiff Jordan are on the certificate of service. Liechty has unsuccessfully tried to resolve this with Jordan.

***History of the Parties***

Mr. Gaines has been the longtime attorney for Jordan's business and he works on a monthly retainer with Jordan's business. In the instant case, Gaines and Jordan signed a Fee and Retainer Agreement on June 14, 2019, concerning the claim against the Adams County sheriff's deputies. **See** exhibit 1. Because Gaines has little experience with claims under 42 USC §1983, he requested that Liechty join him as co-

counsel in the claims against the officers. Liechty joined the team almost one year later, in April, 2020, and they filed Jordan's complaint in August, 2020.

Liechty did not see the Gaines-Jordan fee agreement (exhibit 1) until April 22, 2024 (after Jordan's settlement demand was accepted). **See** exhibit 2, email conveying the agreement. Nor did Liechty have his own signed fee agreement with Jordan. These were two mistakes on Liechty's part.

***The Dispute***

The dispute arose when the defendant officers accepted plaintiff's settlement demand of $130,000, which amount was based on the following strategy.[1]

In preparing for the trial preparation conference, Liechty realized that Jordan might not be able to collect punitive damages against the officers. Jordan's actual damages were small – he was in jail fewer than 10 hours and his criminal attorney's fees, by Gaines, were only a few thousand dollars. He suffered no physical injury. Therefore, his actual damages were estimated to be $10-20,000.[2]

However, on remand, this court had granted plaintiff's request to claim punitive damages against officers and there was a chance that plaintiff could obtain a considerable amount of punitive damages based (1) upon potentially untruthful comments in their police reports, (2) upon Deputy Jenkins changing his testimony in the civil trial concerning the same automobile accident as in the instant case, and (3) upon

---

[1] As an officer of the court, Liechty believes that his statement is enough to support the facts in this motion. In addition, his declaration, exhibit 5, ¶ 5, supports the facts in this motion.

[2] Jordan also had to deal with his sarcastic comments on the audiotape in which he three times told the officers, "Don't shoot me man." Although, under the law, this should not have prevented a finding of liability against the officers, such sarcasm may have decreased Jordan's award from the jury.

instruction that the officers violated clearly established law. However, the county would not be required to pay such damages on behalf of the officers under CRS §24-10-110(1)(b)(I). Therefore, Jordan was in jeopardy of having a sizable punitive award against the officers, but the officers would be judgment proof. Therefore, Liechty conveyed the below strategy to both Jordan and Gaines by which Jordan could compel the county to pay for any punitive award against the officers.

Liechty drafted a demand letter to defense counsel stating that the county had an obligation to protect its officers from punitive exposure and, if the county refused to protect the officers by refusing to accept a reasonable settlement demand, and if the jury provided a sizable punitive award, the officers could sue the county for failing to protect the officers from liability. **See** exhibit 3, demand letter. In exchange for a release from liability, Jordan would then have the officers assign that cause of action to him, potentially allowing him to collect the punitive award from the county.

Liechty first discussed this strategy with Gaines on Tuesday, April 9, 2024, and the two of them tried to estimate the range of such a demand. Liechty suggested a range of $100-150,000 based on the prior experience regarding the jail case (tried to this court two years ago) in which the county refused to offer anything in settlement. Liechty spoke with both Jordan and Gaines on Wednesday about this strategy and the dollar-amount range. On Friday, April 12, he spoke with and obtained permission from both Jordan and Gaines to execute the strategy. Liechty then drafted and sent the demand letter on Friday, April 12.

Twenty-four minutes later on April 12, Liechty sent Jordan, with a copy to Gaines, a modified fee agreement putting into writing what Liechty had explained to Jordan. **See** exhibit 4, contingent fee agreement.[3] At this point in the litigation, the value of the case was driven by attorneys fees (which greatly exceeded Jordan's estimated compensatory damages). On the other hand, to protect Jordan's punitive recovery, Jordan needed to make a reasonable offer that the county would reject. Therefore, exhibit 4 took these two realities into account. At the time of the demand letter, Liechty had approximately $120,000 in documented attorneys fees. **See** exhibit 5, Liechty's declaration and fee ledgers.[4] Gaines estimated that he could claim $20,000 in attorneys fees – he was handicapped because he did not keep daily time records (he was on a monthly retainer with Jordan). And, as stated above, plaintiff's compensatory damages were in the $10-20,000 range. Thus, the fee agreement (exhibit 4) reflected this reality. In the event that the county accepted the $130,000 offer, plaintiff would get $26,000 and counsel would split the remaining $104,000, that is, Jordan would receive slightly more than his estimated damages and the attorneys would receive less than what they would have claimed as attorneys fees if Jordan had prevailed.[5]

Jordan received the fee agreement Friday afternoon and did not call Liechty on Saturday, Sunday, or Monday regarding any questions or whether he wanted to rescind the demand. The county accepted the demand on Tuesday morning. On Thursday,

[3] The coversheet of exhibit 4 is the email conveying the agreement to Jordan, atjdj5555@hotmail.com.

[4] In this exhibit, Liechty explains that his fees, at the time of the settlement, totaled approximately $121,000. This is not the same as a petition for attorneys fees – this simply establishes the good faith belief in what had been incurred as attorneys fees at the time of the settlement demand.

[5] Of course, Liechty's fees after a successful trial would have been closer to $175,000.

April 18, Liechty sent Jordan, with a copy to Gaines, an email memorializing the above chronology. **See** exhibit 6.

Liechty relied upon this modified fee agreement with Jordan in making the demand for $130,000. The demand was in Jordan's interest because it was designed to protect his ability to collect a punitive award. If the demand were too high, and the punitive award did not reach that demand, the county could later argue that it did not breach its duty to protect the officers. If the demand were too low, that would be in neither Jordan's nor the attorneys' interest. Given the fact that the circuit found that the officers violated clearly established law, which, being the law of the case, would probably have been given to the jury in a jury instruction, it was likely that plaintiff would receive a verdict in his favor. Even if Jordan only received modest compensatory damages, Liechty and Gaines would recover their reasonable fees necessary to prosecute the matter. Hence, the new fee agreement reflected this outcome – if the county accepted the demand, Jordan would receive slightly more than his expected compensatory award and the attorneys would receive less than their potential attorney fee recovery.

Jordan did not sign the agreement, exhibit 4. Following defendant's acceptance of the offer, Jordan has insisted on keeping 60% of the settlement proceeds in line with the 2019 fee agreement he had with Gaines. Jordan has dispersed the settlement funds from the county in accordance with this understanding. Liechty requests that this court enforce through promissory estoppel the terms reflected in the 2024 fee

agreement, exhibit 4. Alternatively, Liechty seeks recovery under a theory of *quantum meruit*.

***Neither Fee Agreement is Enforceable***

The 2019 fee agreement (exhibit 1) does not comply with any of the several contingent-fee requirements under CRCP, Chapter 23.3, Rules Governing Contingent Fees, and, consequently, it is not enforceable. **See** , *e.g*., *Dudding v. Norton Frickey & Assoc.*,11 P.3d 441, 445-46 (Colo. 2000).

The 2024 agreement (exhibit 4) partially complies with Chapter 23.3 – because it was provided so late in the litigation, Liechty did not include his standard disclosure statement (attached as exhibit 7). In addition, exhibit 4 cannot be enforced because Rule 4(b) requires a signature. Thus, the matter before the court presents two written documents, neither of which can be enforced as a contract.

Nonetheless, the terms of the 2024 document may be enforced through promissory estoppel. That is, Liechty reasonably relied to his detriment upon the document as setting forth the parties' agreement.

***The Agreement May Be Enforced through Promissory Estoppel***

"A proceeding initiated to establish an attorney's lien … is equitable in nature." *In re: Marriage of Rosenberg*, 690 P.2d 1293, 1294 (Colo. App. 1994). A claim for promissory estoppel lies in equity. ***Marquardt v. Perry***, 200 P.3d 1126, 1128 (Colo. App. 2008). "[R]ecovery in Colorado on a theory of promissory estoppel is permissible when there is no enforceable contract. … Thus, if a plaintiff fails to prove a breach of

contract claim, he or she may nevertheless be able to recover on a promissory estoppel claim." *Id.* at 1129 (citations omitted). The elements of promissory estoppel are:

> (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.

*Id.* These elements play out under the instant facts as follows.

Liechty promised to protect Jordan's right to recover punitive damages through the above strategy. The strategy included the possibility that the county would accept the $130,000 demand, in which event the proceeds would be distributed 20% to Jordan and 80% to the attorneys, consistent with their respective potential recoveries after trial. Jordan understood (at the time that the demand was made) that the value of Jordan's case was driven by attorneys fees, as outlined above. He also knew that the strategy was to protect Jordan's ability to collect a substantial punitive damages verdict if that were to happen. That is, he knew why Liechty's written agreement to him contained the 20%/80% distribution. He also knew that Liechty was relying upon this distribution in order for the $130,000 demand to make sense to the attorneys. Liechty in fact relied to his detriment upon the promise that Jordan would sign the fee agreement.

As a result, the promise in exhibit 4 must be enforced to prevent injustice.

***Alternatively, Fees May Be Awarded through Quantum Meruit***

In a case where the attorney has completed his services to the client, the attorney may recover his fees under *quantum meruit*. *In the Matter of Gilbert*, 346 P.3d 1018, ¶ 26 (Colo. 2015). The elements of this claim are:

> (1) [Jordan] received a benefit, (2) at the [attorneys'] expense, and (3) it would be unjust for the [Jordan] to retain that benefit without paying for it.

*Id.* at ¶ 21.[6] Under this theory of recovery, the court should at least award 50% to the attorneys since that is the standard fee arrangement after winning on appeal. Indeed, but for the additional work put in by Liechty on appeal, Jordan would have received nothing. This is an exceptional result for Jordan (because the argument was purely legal, Jordan contributed nothing to the successful appeal), given that such reversals occur in fewer than 10% of the cases in the 10th circuit. It would be completely unjust for Jordan to retain all the benefit given that he contributed nothing to earning the benefit. Indeed, it was because of the wording of the opinion that the attorneys were able to amend Jordan's complaint to add a claim for punitive damages.

Of course, because the matter is in equity and *quantum meruit* focuses upon fairness, **see** *M.G. Dyess v. MarkWest Liberty Midstream*, 522 P.3d 204, ¶ 18 (Colo. App. 2022),[7] this court could award anything from 50% to 80% to the attorneys given the strategy behind the settlement demand that (1) the amount was driven by the attorneys fees but (2) the reason for making the demand was driven by the need to protect Jordan's punitive recovery.

At this point, prior to hearing from Jordan himself (presumably he will obtain outside counsel), Liechty submits that providing 65% of the settlement proceeds to the

---

[6] *Gilbert* explains that the result in *Dudding* (where the attorney could not recover via *quantum meruit*) only applies to cases where the attorney had not completed his service to the client. *Id.* at ¶ 26. In the instant case, Liechty completed his service to Jordan with the settlement.

[7] *Dyess* explains that a claim for *quantum meruit* can be given to a jury. *Id.* at ¶ 20.

attorneys and 35% to Jordan might be a fair compromise if this court is not willing to enforce exhibit 4 through promissory estoppel.

WHEREFORE, attorney Liechty requests that this court order Jordan to comply with exhibit 4 and provide the attorneys 80% of the settlement proceeds or, in the alternative, that this court, on a theory of *quantum meruit*, order Jordan to provide the attorneys something between 50% and 80% of the settlement proceeds.

Respectfully submitted this May 27, 2024.

By: s/ *Robert M. Liechty*

Robert M. Liechty
ROBERT M LIECHTY PC
1800 Gaylord St.
Denver, Colorado 80206
Tel: (303) 861-5300
Fax: (303) 861-2746
Email: rliechty@crossliechty.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this May 27, 2024, a true and correct copy of the above and foregoing **MOTION FOR DETERMINATION OF ATTORNEYS FEES** was sent via email to the following:

Terrell Gaines
attorneygaines@gmail.com

Separate copy emailed to:
John Jordan
Jdj5555@hotmail.com

*Signed Original at Office of Robert M Liechty PC*

s/ *Robert Liechty*
Robert Liechty