# Robert Liechty

| | |
|---|---|
| **From:** | Robert Liechty |
| **Sent:** | Thursday, April 18, 2024 12:35 PM |
| **To:** | jdj5555@hotmail.com |
| **Cc:** | Terrell Gaines |
| **Subject:** | the settlement |

John,

This puts into writing what we discussed four years ago and last Friday, April 12, when I emailed you the fee agreement. I calculated that it would be in your best interest to make an offer of $130,000 to settle the case in order to protect your ability to collect potential punitive damages. Had we gone to trial, I estimated that your actual damages for pain-and-suffering, etc., would be somewhere in the range of $10-20,000. You had no lost income, no medical bills, and the charges were dropped after minimal attorney's fees. However, punitive damages could have been much more. Because I didn't think that you could collect a large punitive damages award against the officers themselves, we had to put the county in a position where it would be liable for the punitive damages if it did not protect the officers. That is, the county would not be liable for the punitive damages, only the officers would be liable, unless we could show that the county failed to protect the officers from punitive exposure.

Therefore, we had to make a best estimate of what the punitive damages might be. That is, if we went too high on our offer (say $500,000), the jury's verdict might not go that high and, if the county refused to settle for that high amount, that would not show that the county breached its duty to protect the officers from punitive damages. Obviously, if we went too low, that would not be in your interest either. Therefore, in order to protect your interest by not going too low or going too high, we thought the figure between $100,000 and $150,000 would be the sweet spot. I chose to offer $130,000 and you agreed with this strategy and number. In other words, the $130,000 offer was driven by a need to ensure that you could collect punitive damages.

The fee agreement also starts with an estimate of your damages. If we went to trial and you won, you would receive 50% of whatever the jury awarded, the standard percentage for a trial after an appeal. Again, I would estimate a dollar amount of between $10-20,000 for your actual damages and an unknown amount for your punitive damages. However, assuming you won, Terry and I would submit our billing records to the court and be awarded those. If our billing records were more than 50% of the jury's award (which would be the case under the above assumptions, that is, without punitives), we would get our billables and you would get the entire jury award (the $10-20,000). At the moment, I now have over $120,000 into your arrest case (with an additional $65,000 in the First Amendment jail case, which I will never recover). Because Terry bills differently, he would be able to submit a billing statement of around $20,000.

At any rate, the fee agreement reflected the fact that this is what is known as an attorney's fee case because the attorneys fees are the largest calculatable part of the award at this time and the reason why the county settled for so much. That is, the county settled for the high amount (historically for it) because it knew Terry and I would be awarded all of our attorneys fees if we won anything for you and, second, it was afraid of having to pay potential punitive damages. Obviously, if we hit it big with punitive damages, all of us would have gained.

The county surprised us by accepting the offer. Given their refusal to settle your jail case, we took a gamble that they would not want to settle your arrest case. Nonetheless, with the settlement, you will get more than what I thought the jury would award you for your hard-evidence arrest damages, but Terry and I will get less than we would have gotten for our attorneys fees. However, for the county, it was a loss.

Call with any question.

EXHIBIT 6

1

Robert Liechty  
303-861-5300 office  
303-832-1829 direct  
303-319-8382 cell